# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE AT NASHVILLE
## November 12, 2025 Session

## ARMON YUSEF PAZOUKI v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
**No. 2021-A-512      Khadija Lanice Babb, Judge**
_____

**No. M2025-00062-CCA-R3-PC**
_____

In this case of first impression, Petitioner, Armon Yusef Pazouki, entered a conditional guilty plea to domestic assault pursuant to Tennessee Code Annotated section 40-35-313 ("the judicial diversion statute").  As part of the plea agreement, the trial court entered an order granting Petitioner judicial diversion and placing him on supervised probation for eleven months and twenty-nine days.  At a subsequent revocation hearing, Petitioner conceded that he had violated the conditions of his diversionary probation, and pursuant to a new agreement with the State, the trial court revoked Petitioner's judicial diversion and imposed a sentence of eleven months and twenty-nine days suspended to supervised probation.  Petitioner then filed a petition for post-conviction relief, asserting that he received ineffective assistance of counsel during the revocation proceedings and that his plea agreement in that proceeding was unknowing and involuntary.  Following a hearing, the post-conviction court dismissed the petition, finding that Petitioner could not collaterally attack a revocation of judicial diversion through a post-conviction petition.  On appeal, Petitioner contends that the post-conviction court erred in finding that the Post-Conviction Procedure Act does not apply to proceedings relating to the revocation of judicial diversion.  Upon review, we reverse the judgment of the post-conviction court and remand for further proceedings consistent with this opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Reversed and Remanded**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which TIMOTHY L. EASTER, J., joined.  ROBERT H. MONTGOMERY, JR., J., filed a separate concurring opinion.

David Christensen, Columbia, Tennessee, for the appellant, Armon Yusef Pazouki.

Jonathan Skrmetti, Attorney General and Reporter; Caroline Weldon, Assistant Attorney General; Glenn R. Funk, District Attorney General; and Brian Ewald, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Factual and Procedural Background

This appeal raises the issue of whether a defendant, whose judicial diversion has been revoked by the trial court, can obtain post-conviction relief based upon claims that (1) counsel who represented him during the revocation proceedings rendered ineffective assistance, and (2) the plea the defendant entered during the proceedings was unknowing and involuntary. This appears to be an issue of first impression in the state.

Petitioner's case began on March 31, 2021, when the Davidson County Grand Jury issued an indictment charging Petitioner with one count of aggravated assault, a Class C felony. On July 15, 2021, Petitioner entered a guilty plea, pursuant to Tennessee Code Annotated section 40-35-313, to an amended charge of domestic assault, a Class A misdemeanor. The State summarized the facts of the offense, as follows:

> Had this matter proceeded to trial, the State's witnesses are available. And we believe the testimony would have been that, on May the 1st, 2020, the victim . . . contacted police requesting assistance and obtained an order of protection against her ex-boyfriend, [Petitioner]. According to her statements, [Petitioner] pointed a gun at her . . . in February of 2020. And the most -- she had a recording of that incident where she went to the house with her mom and accused [Petitioner] of pointing a gun at her in February. And he . . . initially denied, then admitted saying it wasn't loaded.
>
> All of those events occurred in Davidson County.

Pursuant to a negotiated plea agreement, the trial court entered an "Order of Deferral (Judicial Diversion)," placing Petitioner on supervised probation for 11 months and 29 days. The court ordered that Petitioner have no contact with the victim and complete a 26-week "batterer intervention program." Additionally, the order of deferral prohibited Petitioner from possessing a firearm while on probation.

On May 25, 2022, the trial court issued a violation of probation warrant based upon allegations that Petitioner had violated Rule No. 1 and Rule No. 8 of the rules of probation, which stated, respectively: "I will obey the laws of the United States or any state in which

I may be, as well as any municipal ordinances[,]" and "I will not use intoxicants (beer, whiskey, wine, etc.) of any kind in excess, or use or have in my possession illegal drugs[.]" The warrant alleged that Petitioner had been arrested on May 6, 2022, for driving under the influence (DUI) by the Metropolitan Nashville Police Department. On August 9, 2022, the trial court issued an amended probation violation warrant, which alleged that Petitioner had again violated Rule No. 1 and Rule No. 8, based upon his arrest on July 20, 2022, by the Williamson County Sheriff's Department on four counts of simple possession and one count of possession of drug paraphernalia.

At a hearing on September 28, 2022, trial counsel made the following announcement, "Your Honor, I've spoken with the State. And we have agreed to concede the probation violation. [Petitioner] is going to lose his 40-35-313. He has to do a [Drug and Alcohol Treatment Service] program. And it will restart. His probation will restart." After confirming the agreement with the State, the trial court commented, "I'll go ahead and approve the agreement."

The trial court subsequently entered an order finding that Petitioner had violated the conditions of his probation. The order noted that Petitioner conceded the probation violation, that Petitioner's judicial diversion was revoked, that Petitioner was sentenced to 11 months and 29 days suspended to supervised probation, and that he was to "restart probation." A judgment of conviction was entered the same day, reflecting that Petitioner pled guilty to domestic assault and sentencing him to 11 months and 29 days to be served on supervised probation. The special conditions box of the judgment read, as follows: "PV#1 conceded. Judgment becomes final, conviction is permanent. Suspension of 11/29, restart today w/ drug [and] alcohol assessment, treatments, and screens. Loss of 40-35-313[.]"

On May 22, 2023, Petitioner filed a timely petition for post-conviction relief, claiming that he was denied the effective assistance of counsel and that his guilty plea was unknowingly and involuntarily entered. Specifically, Petitioner alleged that trial counsel failed to conduct a reasonable investigation into Petitioner's new arrests. He contended that trial counsel knew the DUI charge "lacked strength" and that counsel never investigated "the circumstances of the Williamson County case or spoke to either the State or defense counsel" on that case. Petitioner noted that, in February 2023, the DUI charge was dismissed in Davidson County General Sessions Court, and the State entered a nolle prosequi in Williamson County Circuit Court on Petitioner's drug-related charges. Petitioner asserted that trial counsel "had a duty to conduct a reasonable investigation into the arrests that served as the basis of the [probation] violation warrants" and that counsel's failure to do so constituted deficient performance. He insisted that trial counsel's performance was also deficient based upon counsel's advice that Petitioner concede the probation violation and be sentenced by the trial court on the domestic assault charge. He

- 3 -

argued that "[n]o legitimate trial strategy or tactic justified trial counsel's advice which resulted in a criminal conviction for [Petitioner]."

Additionally, Petitioner alleged that the trial court clerk's file contained no written acknowledgement of rights and waiver of said rights. Petitioner maintained that trial counsel "did not fully explain the rights afforded at a violation of probation proceeding." Specifically, Petitioner alleged he "did not fully understand that[,] even if the [trial court] found he violated probation, the [c]ourt did not have to revoke diversion."

On May 25, 2023, the post-conviction court entered a preliminary order, finding that Petitioner may have raised a colorable claim and ordering the State to file a written response to the petition, which it did on October 2, 2023. The post-conviction court conducted a hearing on April 30, 2024, and August 8, 2024. At the hearing, Petitioner testified that he initially entered a plea to domestic assault under the judicial diversion statute. He explained that he was placed on supervised probation for eleven months and twenty-nine days with the understanding that, if he did not "get in any trouble[,]" the case would be expunged. Petitioner testified that, while on probation, he was arrested on two occasions—once for DUI in Davidson County and once for four counts of simple possession in Williamson County. Regarding the Williamson County charges, Petitioner explained that he had been "struggling with addiction" at the time and that he had been using heroin while on probation. He said that he was "high" when his probation officer conducted a "home check" at his residence. He said that he initially went to the hospital but that, upon checking out, he learned that there were warrants for his arrest. Petitioner stated that he was charged with four counts of simple possession based upon the following being found at his residence: Xanax, cocaine, heroin, and marijuana. He agreed that he had been using these drugs while on judicial diversion. Petitioner explained that the charges were later dismissed and expunged based upon his cooperation with law enforcement.

Regarding his arrest for DUI, Petitioner said that he was rear-ended by someone at a red light in Antioch. Petitioner stated that he and the other motorist initially pulled into a gas station and called police to report the accident. He said, however, that when the other motorist's father arrived at the scene, an argument ensued, and Petitioner called 9-1-1. Petitioner stated that he was instructed to return to his car, lock his doors, and wait for the police. He said that he fell asleep in his car while waiting for the police, who did not arrive until four hours later. The following exchange then occurred:

> Q. Okay. After four hours. And they ended up charging you with a DUI, correct?

A. Yes, sir. They woke me up to ambulances saying that I was overdosing. And I had just fallen asleep after following the instructions from the police to go to my car and lock the doors.

Q. Right, and lock the door. So they took your blood.

A. Yes, sir.

Q. And the blood alcohol limit came back as what?

A. Zero. There was no alcohol in my system. There was just my prescribed medication.

Q. Okay. What is your prescribed medication?

A. It was Valium at that time.

Q. Okay. So at that time, you were prescribed Valium. Did you have any illegal drugs in your system?

A. No, sir.

Petitioner said that the DUI case was eventually dismissed on February 15, 2023, after a preliminary hearing in general sessions court.

Petitioner testified that trial counsel never asked him about the new charges in Williamson County and that he had been instructed by the prosecutor in Williamson County "not to speak about" his cooperation with law enforcement. Petitioner said that he told trial counsel that the charges would likely be dismissed but did not tell trial counsel why he believed that would happen. He stated that, as far as he knew, trial counsel did not investigate the Williamson County arrest. Petitioner said that trial counsel represented him on the Davidson County arrest for DUI and on the probation violation for the domestic assault but not on the Williamson County charges. He testified that he told trial counsel that his blood draw following the DUI arrest would come back negative for alcohol and illegal drugs. Petitioner recalled that he spoke to trial counsel about the DUI charge in court and over the phone and that they spoke about the probation violation at court on September 28, 2022—the day it was docketed. He said that, after trial counsel spoke to the prosecutor, trial counsel "came back with they want to reinstate you and you need to take a drug class." Petitioner said that trial counsel told him "it was a good deal" and that Petitioner "should take it."

Petitioner testified that the Williamson County charges were dismissed on February 27, 2023. When asked "if you knew you were not guilty of a DUI and you had told [trial counsel] this, . . . why did you accept the idea that you should plead guilty to a violation of probation and lose diversion[,]" Petitioner responded, "It was my understanding that . . . the alternate possibility was revoking my probation, putting my time into effect and I was going to have to spend possibly a year in jail." Petitioner testified that he entered the agreement on the probation violation he was "really scared about possibly . . . putting my time into effect" and agreed that he entered into the agreement to avoid jail time. He said that trial counsel did not inform him of his right to testify at a probation revocation hearing, his right to call witnesses and present evidence, and his right to appeal; he testified that he did not sign anything to indicate that he understood those rights. Petitioner stated that trial counsel never told him that, even if the trial court found he had violated probation, the court did not have to revoke his diversion. Petitioner said that he recalled being in court when trial counsel announced the agreement on the probation violation. He said, however, that he was not placed under oath and asked questions about the agreement, that he never told the trial court that was what he wanted to do, and that he never signed any paperwork regarding the agreement.

Petitioner testified that, after entering into the agreement on the probation violation, he successfully completed probation. Petitioner said that he was engaged, that he worked as a cook, and that he was in recovery from his drug addiction. He stated that having a domestic assault conviction on his record negatively impacted his ability to obtain higher-paying employment. He opined that trial counsel did not effectively represent him and that his plea to the diversionary probation violation was not knowing and voluntary.

On cross-examination, Petitioner agreed that he pled guilty to domestic assault pursuant to the judicial diversion statute on July 15, 2021, and that he began probation that day. He agreed that he had been aware of the rules of probation, including that he was to refrain from committing new offenses and to refrain from any drug or alcohol use while on probation. He said that because he was a resident of Williamson County, his probation supervision was transferred to Williamson County from Davidson County. Petitioner acknowledged that he was arrested for DUI in May 2022 and for simple possession in July 2022. He said that he was arrested for the probation violation warrants in June 2022, and in August 2022; he recalled that he made bond after each of these arrests. Petitioner agreed that he and trial counsel did not have the results from the DUI blood draw by the time he conceded the probation violation. He said that he asked trial counsel if they could delay the probation violation hearing until after they received the results of the testing.

Petitioner agreed that, when his probation officer arrived at his residence, he was "[p]assed out" due to his heroin use. He explained that, after his arrest on the simple possession charges, he spoke to detectives and the prosecutor in Williamson County about

"working off" his charges by working with detectives to secure arrests of multiple drug dealers. He stated that, by his cooperation, he believed there "would be a much more favorable chance and outcome when [his charges were] presented to the Grand Jury then not." He agreed that he worked as a confidential informant in Williamson County and that his charges in that county were eventually dismissed on February 27, 2023. He agreed that the dismissal of the charges was based solely on his cooperation and not because the charges lacked merit. He acknowledged that he had been using and in possession of the drugs found at his residence. Petitioner testified that trial counsel never asked him about the Williamson County charges and that he never volunteered the information.

Trial counsel testified that his practice primarily consisted of criminal defense work and that he had been appointed to represent Petitioner on his Davidson County DUI charge and the probation violation warrants in the domestic assault case; he did not represent Petitioner on the simple possession charges in Williamson County. Trial counsel stated that, when representing defendants on probation violation, he had:

> a standard interaction with individuals. First, it can be just kind of telling them the situation and giving them legal advice on the likelihood of being found in violation and what could happen in that violation. But then once we've reached a decision, I go through kind of a template, if you will, that I repeat each time.

He continued:

> I let them know that they have a right to have a hearing and that they would -- the State has to call their witnesses. I would be able to cross examine the State's witnesses. He would be able to testify on his own behalf if he wanted to. But outside of that, then the Judge would make a decision based on the probation violation and what would happen because of that probation violation. And then afterwards, he could appeal that decision.

Trial counsel testified that, when representing Petitioner on the probation violation warrants, he received an offer from the State, which he conveyed to Petitioner. He recalled that the offer was for Petitioner to admit the violation, have his judicial diversion revoked, and be sentenced to eleven months and twenty-nine days suspended to supervised probation. He said he explained to Petitioner that his conviction for domestic assault could not then be expunged. Trial counsel testified that he advised Petitioner to accept the State's offer, explaining:

> I said that it was something to accept because of the volatile nature of you don't know what's going to happen in probation violations especially in cases

- 7 -

where they have multiple charges and multiple counties. I said, you know, it's high risk, you know, and the probability that you're still found in violation is highly possible.

And also, it's the Judge's determination to take [judicial diversion] away. And you know, kind of one of the things I'll say in those situations is just like well, we would kind of be taken out of the [trial court's] hand and, you know, we have a more assured solution.

Trial counsel agreed that the transcript of the probation revocation hearing reflected that Petitioner did not have a "speaking role" in the matter. He further agreed that Petitioner did not sign the amended judgment but stated that this was not uncommon in Davidson County. Trial counsel stated that he was appointed to represent Petitioner on the probation violation warrants on the same day that Petitioner agreed to accept the State's settlement offer. He acknowledged that he was unable to investigate the Williamson County simple possession charges prior to that day. Trial counsel agreed that Petitioner had told him that Petitioner had no alcohol or illegal drugs in his system at the time he had been arrested for DUI; counsel stated, however, that they had not received the results of the blood draw by the date of Petitioner's probation revocation hearing. When asked why he did not request a continuance, trial counsel responded, "Because [Petitioner] made the decision to take that offer. That's why. I ultimately have to do what my client tells me to do." Trial counsel agreed that Petitioner did not sign a waiver of rights at the probation revocation hearing.

Trial counsel testified that Petitioner's DUI charge was later dismissed after a preliminary hearing in general sessions court. Counsel said that he asked Petitioner about the simple possession charges in Williamson County but that Petitioner did not share much information about them.

At the conclusion of the hearing, the post-conviction court took the matter under advisement. On December 10, 2024, the post-conviction court entered a written order dismissing the petition. In its order, the post-conviction court explained:

Tennessee [courts] have consistently interpreted the Tennessee Post-Conviction Procedure[] Act and held that it does not permit the filing of a petition under its provisions to attack collaterally the validity of a proceeding to revoke the suspension of sentence and/or probation. *Young v. State*, 101 S.W.3d 430 ([Tenn. Crim. App.] 2002). In addition, the *Young* Court determined that . . . "it cannot be said that the order revoking suspension of sentence and probation imposes a new sentence subject to collateral attack under the Tennessee Post-Conviction Procedure[] Act." *Id*. Finally,

- 8 -

Tennessee [courts] have held that while the right to counsel is constitutionally guaranteed in criminal cases, the right of counsel at a probation revocation hearing is not constitutionally guaranteed. *Johnson v. State*, No. E2011-00562-CCA-R3-PC, 2012 WL 1066502 (quoting [*State v. Eldridge*], No. M2004-01080-CCA-R3-CD, 2006 WL 359665, at *3 (Tenn. Crim. App. Feb. 16, 2006)).

The post-conviction court ultimately concluded that the Post-Conviction Procedure Act "does not cover probation violation hearings" and dismissed the petition. Petitioner subsequently filed a motion to reconsider on December 11, 2024, and an untimely notice of appeal on January 17, 2025.[1] This court subsequently entered an order, waiving the untimely filing of the notice of appeal.

## Analysis

On appeal, Petitioner contends that the post-conviction court erred in finding that the Post-Conviction Procedure Act does not apply to the revocation of judicial diversion proceedings. The State responds that "[b]ecause removal of the possibility of expunction is not tantamount to a new sentence, the post-conviction court's dismissal of the petition attacking the validity of [Petitioner's] judicial diversion revocation was proper."[2]

Judicial diversion is a form of "legislative largess" whereby a qualified defendant enters a guilty or nolo contendere plea or is found guilty of an offense without the entry of a judgment of guilty. *State v. Schindler*, 986 S.W.2d 209, 211 (Tenn. 1999). The plea or verdict is held in abeyance and further proceedings are deferred under reasonable conditions during a probationary period established by the trial court. *See* Tenn. Code Ann. § 40-35-313(a)(1)(A). "Reasonable conditions" can include the requirement that a qualified defendant serve up to thirty days in jail or the workhouse. Tenn. Code Ann. § 40-35-313(a)(1)(B)(iii)(b). The judicial diversion statute provides that "[t]he deferral shall be for a period of time not less than the period of the maximum sentence for the misdemeanor with which the person is charged or not more than the period of the maximum sentence of the felony with which the person is charged" and that judicial diversion may be ordered only with the defendant's consent. Tenn. Code Ann. § 40-35-313(a)(1)(A). If the defendant successfully completes his period of diversion, the trial court discharges the defendant and dismisses the proceedings without a court adjudication of guilt or the entry of a judgment of guilt. Tenn. Code Ann. § 40-35-313(a)(2).

---

[1] The appellate record does not contain an order disposing of Petitioner's motion to reconsider.
[2] We note that our review is limited to the party-framed controversy that was presented and decided in the post-conviction court. *See State v. Bristol*, 654 S.W.3d 917, 924 (Tenn. 2022).

- 9 -

The Post-Conviction Procedure Act provides an avenue of relief from a conviction or sentence obtained in violation of the state or federal constitution. *See* Tenn. Code Ann. § 40-30-103; *Rodriguez v. State*, 437 S.W.3d 450, 455 (Tenn. 2014). Under the Act, a "conviction" requires an adjudication by the trial court and the formal entry of a judgment. *Rodriguez,* 437 S.W.3d at 454. The judicial diversion statute, however, forecloses the entry of a judgment of conviction unless the defendant violates the terms of his diversion. *Id*. at 457 (citing *Schindler*, 986 S.W.2d at 211; Tenn. Code Ann. §§ 40-35-313(a)(1)(A), (B), -313(a)(2)).

If a defendant violates the terms and conditions of his diversionary probation, a trial court may revoke judicial diversion. *State v. Daniel*, No. M2001-01217-CCA-R3-CD, 2002 WL 1402176, at *2 (Tenn. Crim. App. July 1, 2002) ("Upon finding a violation of probation by a defendant on judicial diversion, the trial court may revoke judicial diversion.").[3] Upon finding a violation of probation and then determining that judicial diversion should be revoked, the trial court shall proceed to sentence the defendant for the original offense "pursuant to the standard provisions of the Sentencing Act." *Id.* (citing *State v. Johnson*, 15 S.W.3d 515, 519 (Tenn. Crim. App. 1999)); *see also Alder v. State*, 108 S.W.3d 263, 266 (Tenn. Crim. App. 2002); *State v. Hensley*, No. E2012-00812-CCA-R3-CD, 2013 WL 793579, at *4 (Tenn. Crim. App. Mar. 4, 2013).

The issue of whether a defendant can file a petition for post-conviction relief, raising claims of ineffective assistance of counsel and an unknowing plea in the context of the revocation of judicial diversion is not addressed in the Post-Conviction Procedure Act or in our prior case law. However, as recognized by the post-conviction court, this court has previously determined that a revocation of probation may not be challenged in a post-conviction proceeding. *Young v. State*, 101 S.W.3d 430, 432 (Tenn. Crim. App. 2002). In *Young*, this court concluded that an order revoking probation does not impose a new sentence but merely "ends the period of suspension of the execution of the original term and mandates that the original sentence be carried out." *Id.*

Our supreme court declined to extend *Young* when addressing the issue of whether the revocation of a community corrections sentence may be challenged in a post-conviction petition. *Carpenter v. State*, 136 S.W.3d 608, 609 (Tenn. 2004). In *Carpenter*, the trial court revoked the defendant's community corrections sentence and imposed a new sentence of eight years' incarceration, which exceeded his original sentence of six years. *Id*. at 610. The defendant then filed a post-conviction petition, alleging that he received ineffective assistance of counsel at his community corrections revocation and resentencing

---

[3] We note that the judicial diversion statute does not mandate that the trial court must revoke diversion upon its finding that a defendant violated the conditions of his probation. *Hensley*, 2013 WL 793579, at *4 (Tenn. Crim. App. Mar. 4, 2013) (citing Tenn. Code Ann. § 40-35-313(a)(2)).

hearing, and the post-conviction court dismissed the petition after determining that the right to effective assistance of counsel did not apply in a revocation hearing. *Id*. This court reversed the trial court's judgment and remanded for further proceedings. *Id*. at 609.

In affirming the judgment of this court, the supreme court noted that, unlike the revocation of probation, a revocation of a community corrections sentence "presents the additional issue of resentencing." *Id*. at 611-12 (citing Tenn. Code Ann. § 40-36-106(e)(4)). The court explained:

> Community corrections revocation proceedings present two major issues: first, whether the terms of the community corrections sentence have been violated, and second, what sentence should be imposed if a revocation is warranted.
>
> . . . .
>
> Following a revocation of a community corrections sentence, the trial court exercises the same discretion in resentencing as did the initial sentencing court. The trial court has the authority, upon considering the evidence in the revocation and resentencing hearing, to order a new and longer sentence than had initially been ordered.

*Id*. at 612. (citations omitted). In light of these substantive differences, the supreme court determined that *Young* was inapplicable and held that a petitioner may challenge the revocation of a community corrections sentence in a post-conviction proceeding. *Id*.

Based upon the same reasoning, we conclude that *Young* is inapplicable in the context of the revocation of judicial diversion. The revocation of judicial diversion, unlike the revocation of probation, presents the additional issue of sentencing of the defendant for the original offense "pursuant to the standard provisions of the Sentencing Act." *Hensley*, 2013 WL 793579, at \*4 (quoting *Daniel*, 2002 WL 1402176, at \*2). Thus, the trial court would have the authority, after hearing the evidence presented during the revocation proceeding, to impose a probated sentence with different or additional conditions or to impose a sentence of confinement exceeding the thirty-day limit imposed by the judicial diversion statute. *See* Tenn. Code Ann. § 40-35-313(a)(1)(B)(iii)(b). The revocation of judicial diversion and sentencing for the original offense are often addressed in the same hearing, as it was in the instant case, and the issues that arise are "irretrievably intertwined." *Carpenter*, 136 S.W.3d at 612. As with the revocation of a community corrections sentence, there is no effective way to separate ineffectiveness of counsel that prejudices a defendant as to the issue of revocation of judicial diversion from ineffectiveness of counsel that prejudices the defendant as to the issue of sentencing. *See id*. Accordingly, we

conclude that a defendant may challenge a trial court's revocation of judicial diversion and imposition of sentence in a post-conviction proceeding.

## **Conclusion**

Based upon the foregoing, we reverse the judgment of the post-conviction court and remand for further proceedings consistent with this opinion.


_s/Robert L. Holloway, Jr._
ROBERT L. HOLLOWAY, JR., JUDGE